Thank you, Mr. Levine. Good morning. I am Mark Levine of the Office of the State Appellate Defender, representing Gerard Richardson, the appellant. Now, the appellant's point here is pretty unremarkable. He was sentenced to 17 years, which is 10 years above what the maximum for the offense would have been without body armor. Body armor elevated it from a Class II to a special Class X with a sentencing range of 10 to 40. Since body armor, the presence of body armor elevated the sentencing range, it had to be proved beyond a reasonable doubt, and it wasn't. Before I go on, let me say that I don't know what I was thinking when I wrote in the brief as an alternative form of relief that it should be sent back for a new trial. I don't know what I was thinking over there. Really, since there was no evidence at all about the material of this vest that Mr. Richardson was wearing, there was no evidence at all that it could function as body armor and resist bullets, other than a lay opinion that was offered by a police officer without any foundation. Since that opinion should have been excluded, there would have been no evidence at all, zero, that this thing was capable of functioning as a bulletproof vest. What about the label, American Body Armor? The label said it was made by the American Body Armor Company, but one of my colleagues reminded me that there's a company that makes underwear that's called Under Armour, and there's a line of... Well, Under Armour doesn't look like body armor. This is body armor, not body armor. And it's spelled differently. It's O-U-R, I believe. I'm pretty sure. And then there's a line of car care products called Armourall. So the name of the company... Okay. It's on there. It's on there. Are you familiar with Illinois Rule of Evidence 902, self-authentication? Yes, Your Honor. Subparagraph... I don't think either party referred to it in briefs, but...  Subparagraph 7, trade inscriptions and the like. Inscriptions, signs, tags, labels purporting to have been affixed in the course of business indicating the ownership, control, or origin. So this, in addition to the testimony of the officers, which was opinion, you also had the way the defendant was wearing it at the time that he was first seen by the officers, correct? Mm-hmm. He was armed with a gun. He was wearing it. He was wearing a coat. And also armed with a gun. He had a coat over the vest, correct? That's right. Is it reasonable to infer from that that it probably was body armor? No, Your Honor. It's reasonable to infer from that that Mr. Richardson thought it was body armor, perhaps. Reasonable to infer from the policeman's testimony that he thought that what he was wearing was body armor. But the question here, and from the label, but the question here is, really, was it actually body armor within the meaning of the statute?  If the legislature thought it was necessary to pass a look-alike statute, it's not sufficient that the stuff is white powder that looks like a controlled substance. It has to actually be the controlled substance. Because there are too many items out there, too many different substances that may be mistaken for cocaine or some other controlled substance. And the person might think that it is cocaine. He might have it packaged up like cocaine. But either he's cheating people or he's just wrong. And that's why the legislature felt it necessary to pass a look-alike substance. But we don't have that with body armor. It's called a truth in drug dealing. Exactly. The statute here requires that it actually be. Intent, thinking that it's body armor, that doesn't do it. Actually, the statute... Your argument is that the trial court's finding that the state had met its burden of proof is against the manifest way of the evidence. No reasonable finder of fact could have concluded that this was body armor based upon all the evidence. Well, really, it's a two-part. I can't get directly to that because the policeman testified that it was body armor. He said, it's exactly like what I wear every day and I know it's body armor. Oh, he said that over objection. This is his opinion that this was body armor. So my first part of my argument has to be that the defense objection to that opinion should have been excluded. It should have been granted and the evidence excluded. And that would be an abuse of discretion standard, correct? Well, the first step, perhaps. It's an evidentiary ruling. But there's no foundation for it and that has to be a de novo review. No foundation for the opinion? Correct. Is that what you were saying? No foundation for the policeman's opinion that this was body armor. So you're saying that their opinions couldn't have been accepted as lay opinion? Exactly. And why not? Since, I mean, wouldn't it? Because the statute, let me say, may I back up for a moment? I want to answer your question. Sure. It deserves a full answer. The statute defining body armor has four parts to it. Every single one of these parts says that it's made, says that the thing is made of Kevlar or any other similar material. With a little exception in number two, which is one that the state relied on. There it says it's made of Kevlar or any other similar material or any other type of insert. Now since the state didn't have any evidence of what the material was of the insert, it argued in closing to the jury, oh, it says any other type of insert over here. But as I said in the brief, if the material really didn't matter for the type of insert, then the tissue in a t-shirt pocket would be body armor within this. No. We don't construe statutes to be silly like that. We have to look at the intent of the legislature. What do they mean by body armor? And what do they, you have to look at the statute as a whole to see the intent of the legislature in order to avoid being silly. All of their definitions refer to the material of the thing. Kevlar or similar material, similar how? Must be, the only thing that makes any sense is that it's similar in its ability to resist bullets. What if the police officer who testified said I took out my SOG knife and tried to penetrate the vest and I was unable to do so and then he said I took it outside, set it up against a tree and shot it and the bullet bounced off harmlessly. I would not be making this argument. I think that would be proof. Okay. At least we've established the minimum level of truth. Are you familiar with this case People v. Halley, H-A-L-L-E-Y, 131, 112nd, 1070? I can't say that I am. Where an argument that was made that's very similar to your argument, the state introduced opinion testimony that the defendants, the defendants, husband and wife, displayed a handgun during the course of an encounter in a bar. The handgun, there's no immediate arrest, the handgun's never recovered, it's never produced. And the appellate court found that the evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt and it was not a necessary part of the state's case to prove that the pistols were loaded with bullets containing a firing pin, had open barrels or were otherwise in an inoperable condition. That the opinions of the patrons that witnessed the display of the firearm together with the behavior of the defendants was enough to satisfy proof beyond a reasonable doubt. That did not prohibit the defendant from producing the firearm in a non-functioning state or presenting some evidence. How is that different than this? And they made the same argument that the opinion evidence was insufficient. How is this case different? I mean, this is an item that the police are used to, they wear it every day. One of them had been in the military or all the time in the military and the testimony was, this is the same vest that we wear. How is that different than the Haley case? In this case, the state did offer expert evidence in the form of a stipulation that the shotgun was a functioning gun. It's different because we all know what a gun looks like. Kevlar, I've seen pictures of it. It's lightweight and flexible, I understand. It looks like fabric, really. We know that counterfeit Kevlar is sold because the stuff is expensive. And so, if stuff is expensive, just like with the drugs, there's going to be people getting in the business of selling cheap stuff as the real thing. And as I argued in the brief, it's serious enough that there's legislation introduced in the Senate because they were pawning this off on our soldiers and these people, soldiers, know that their lives are going to depend on it. They are certainly familiar with bulletproof materials and it must be good enough that they can't tell the difference or they would say, what's this? I want real stuff. This is fake. This is obviously fake. This is like a toy gun. This is fake stuff. Don't give me a toy. Give me the real thing. So it must be that it's good enough that it could fool even soldiers or serious senators wouldn't have been offering this legislation. Now, Kevlar is not something that an ordinary person, I'm like a gun. I'd recognize a gun. You're not an ordinary person. We don't see it every day. You're above the law. We don't see it every day. Now the police officer did. So if the police officer did and we want to qualify him as an expert I'd have perhaps a different argument, but it's not the argument that I need to make today because he was not qualified as an expert and the judge even said making it explicit on the record later on, that this officer had not been qualified as an expert so for him to offer an opinion his opinion has to be on something that any normal person of normal experience would know and if Kevlar is something you have to be a police officer to wear it every day and be really familiar no this feels a little too slippery or something like that that you'd know if you were really familiar with this stuff, then fine then he needed to be qualified as an expert, revealed in discovery as an expert, that's really what the defense council was objecting to. I have a little issue with that because even for a lay opinion there still has to be a foundation for example, a person on an island that doesn't see vehicles they're normal, common, everyday people, but they're not qualified to give a lay opinion on the speed of a vehicle because they don't see vehicles every day here you have a lay person who happens to be a police officer who sees the item every day. Yes, your honor, you're right it's a little different. You're right about that and so our case is even stronger than that What about authentication Justice Burkett brought up why isn't the body armor label self-authenticating or establishing that this is a product of a company that makes body armor Well it's self-authenticating to the extent that we know the company, if this were a products liability suit for example because the thing didn't work and a bullet went right through it the label might be self-authenticating as to who manufactured it, but I don't think we can't infer just from the name what the company chose to call itself that this stuff actually is body armor that is able to function as body armor within the meaning of the statute just simply from that name as I said there are other companies that use armor in their name that don't make anything resembling Are you aware that there are different types of body armor there are body armor that stops pistol bullets or revolver handgun bullets that don't necessarily stop very very powerful handgun bullets and then there's body armor that stops rifle bullets because they're so much bigger heavier fly at two or three times the speed of a pistol bullet and often have three times actually it's more like thirty times the amount of kinetic energy that a pistol bullet would have so does the statute differentiate between those styles of body armor or is there only just one body armor and it's just that kind or any kind that's made with Kevlar or with inserts Well of course there was no evidence that this thing that he was wearing would have stopped any kind of a bullet no evidence that it would have stopped a BB as far as that goes When you keep saying no evidence you have the opinions of the police officers Right we have the opinion of the police officer but the foundation for his opinion was what what it looked like Officer Cancino testified that it was not sent to a crime lab it was not tested in any way and as Justice McClaren said earlier if they'd taken it to a range and shot a bullet at it then we'd have something I understand what you're saying but you keep using the term no evidence, your argument is that the evidence was insufficient because there was plenty of evidence that it was a vest worn by the defendant, it had inserts it looked like the body armor that they wear every day It looked like body armor and the defendant probably thought it was body armor but the standard is not intent to wear body armor, it's wearing actual body armor of a material that can stop bullets Thank you Thank you Your Honor You'll have an opportunity to make your vote Ms. Diaz You may proceed Good morning Your Honors, Counsel May it please the court I'm Aileen Diaz on behalf of the people I would like to start by focusing the court on the issue that the people believe is actually the pertinent issue today which is whether the trial court abused its discretion at the evidentiary hearing when it determined that an expert was not needed to testify about body armor I understand that the defendant was charged with unlawful possession of a weapon by a felon while wearing body armor so the people understand that they had to prove beyond a reasonable doubt that what the defendant possessed or what he was wearing was in fact body armor however the pertinent statute which the people referred the trial judge to in the pre-trial motion where the judge determined that an expert was not needed and the pertinent statute which was the same which the people referred the jury to before deliberations does not discuss anything about body armor having to be ballistic resistant or bulletproof under the Illinois body armor statute which is 720 ILCS 533 F1A there are four definitions of things that could qualify as body armor and one of them is soft body armor which is made of Kevlar or any other similar material or metal or any other type of insert and which is lightweight and pliable and which can be easily concealed under a shirt now expert testimony is necessary when the testimony is within the witnesses qualifications and experiences and beyond the qualifications and experiences of an average juror nothing in section 2 of the body armor statute is beyond the qualification of an average juror any type of insert which officer Cancino he pulled out an insert from the vest which was later submitted to the jury during deliberations he testified that it was lightweight and pliable which the jury would have been able to see and as was apparent to the officer, to the court and to the jury given the verdict it was something that could have been concealed under a shirt as it was because you just described the tissue that Mr. Levine put under his suit I understand that unless of course it was a Kevlar tissue that would stop bullets, kryptonite nuclear devices so the problem with your argument at least as Mr. Levine and maybe me see it is it's one thing to talk about what you see facially but then there is a qualifying characteristic which is it's supposed to stop things things that travel fast and are lethal are slow traveling and sharp so how do you get around that aspect of the proof well officer Cancino did say, he did describe what he saw what he took out, the inserts he described it, he said that in his opinion those were trauma plates that would serve to stop any, or to protect vital organs, I'm sorry so I think that that's sufficient because nothing in section 2, I understand that there needs to be some purpose, it wouldn't be a tissue that would just be silly, I agree with counsel, but we don't have that here in this case, we don't have defendant walking down the street in broad daylight wearing a bubble vest from the gap with a gun and tissue in his pocket, what we have is somebody in a trench coat with a weapon in what was found to be body armor and I don't think, well it's not that I don't think we didn't have to prove that it was ballistic resistance, I think we got led down the wrong path and we started talking about bullet proof because nothing let me ask you this, the state had an expert firearms expert, why not have that expert do some kind of examination or another expert in the lab do an examination to determine whether or not this was in fact what the label and the use of it the wearing of it purports it to be for purposes not just of admissibility but proof beyond a reasonable doubt that it actually was in fact body armor and remove any speculation the defendant doesn't have any burden he doesn't have to subject, correct, to ask for testing I assume there was no pre-trial request for testing, no, there was not why not just, why didn't the state just submit it for testing, the state could have submitted it for testing to prove that it was Kevlar but the state didn't have to prove that it was Kevlar or that it was bullet resistant so the evidence presented by the state was enough they didn't need to do it via expert testimony and given the fact that the jurors were able, so I think first of all I would like to parse that out so the judge did not abuse his discretion when he allowed the officer to testify as a lay witness and it was proven beyond a reasonable doubt by the officer's testimony and I think we can reasonably infer that when the jurors handled the vest they could see that subsection 2, or not subsection, section 2 of the statute was clearly applicable to the vest that was presented at trial Wasn't this though one of the ultimate issues for the jury to decide whether or not this was body armor and yet the judge in essence really did admit what maybe turned out to be expert testimony on this ultimate issue for the jury Well since this wasn't witnesses are allowed to testify about ultimate issues I don't have the rule number but they are allowed to testify about ultimate issues in a case and the jury doesn't have to take the witnesses words as factual determinations, they don't have to take them as true and they're instructed as such before deliberations so Was the jury allowed to take the vest back into the jury room? Yes Were they given knives? They were not actually, they were not allowed to take the gun Do we know whether they tested them or not? In other words if they were allowed to take it back into the jury room? Correct Was there any indication as to whether or not they attempted a lay test of? Your honor that was not in the record. Well if they did that that would be reversible error We can't experiment with evidence Well I know thank you What if they looked at the label and someone said you know, I've got body armor at home that's got the same label Would that have been sufficient? Would that have been sufficient? I would make the argument that yes it would have been sufficient What would be the purpose to allow them to take it back if supposedly it takes some whether or not this is Kevlar or some other But it doesn't take expertise because the officer was not qualified as an expert Is there any case authority or citation authority that you might have that would indicate that Kevlar is something that a layman would be able to identify merely by examination? No but the average juror or a lay witness doesn't have to determine that it's Kevlar The witness just has to determine that it's Kevlar or similar material or metal or any other type of insert Have you ever seen graphite braided? I have not Have you ever seen Kevlar braided? I have not Have you ever seen fishing rods that are made out of graphite and Kevlar or graphite or Kevlar? They look an awful lot alike and it's a good thing then that we didn't have to prove that it was Kevlar or at least a tag and during the closing arguments the prosecutor did point out that there was the tag that said body armor and I think an argument could be made that that would have been sufficient but there was much more evidence than that and I think the reason for allowing the vest to go back to the jury was not so that they could test it to see if it could withstand knives or anything else but they needed to determine that it was lightweight and pliable and that it could be concealed under a shirt and so I think it was important that they sent it back Did the defense object to the vest going back to the jury? I do not believe so If there are no further questions I would like to address the second issue briefly the issue about ineffective assistance of counsel for failing to object to Officer Baker's testimony Officer Baker's testimony all he said was this appears to be a bulletproof vest I'm an officer it looks like what I wear every day I think it was proper trial strategy for the attorney not to object to that because during extensive pre-trial motions the judge had already determined that expert testimony was not necessary but even if it was even if he should have preserved it for the record even if trial counsel should have preserved this for the record it was not prejudicial because there was Officer Baker's testimony was at best cumulative given what Officer Cancino testified to So the state filed a motion to eliminate seeking authority from the court that it didn't need to retain an expert to testify about the body armor No How did it get to that? During the pre-trial motions when the state said that it would bring in officers to testify about the body armor defense attorney objected and said not unless we qualify or I would like to qualify the officers as experts and the trial judge said they don't need to be experts and during that pre-trial motion the prosecutor did point the judge to the relevant section in the body armor statute which was section 2 and the judge was aware of what exactly needed to be proven under section 2 and I don't think I can't think of a situation where we would need an expert to testify as to the factors in section 2 because it's not beyond the qualifications of an average juror So if there are no other questions we would ask this court to affirm the judgment below Thank you Thank you Mr. Levine The only evidence about the material of these inserts was that the inserts were blue The garment was lightweight and flexible I thought the testimony was that it would protect vital organs Now the inference there would suggest something It also would suggest something else which is it doesn't protect non-vital organs The officer testified that the purpose of this thing was he says trauma plates Okay I don't have any doubt that the officer thought that what he was wearing was body armor or that the defendant thought that what he was wearing was body armor Your tie is stuck in your pocket Oh, it's inserted I wasn't sure if that was supposed to be a signal or something I got it right away Here's the point though of your argument Your argument is that it was an abuse of discretion for the trial court to allow that opinion testimony Correct? Without any foundation for it That was pre-trial and it stayed So if we were to reverse if we were to agree with your argument wouldn't the relief be reversal and remand for a new trial on the aggravating factor I mean we'd reverse the entire case and send it back but because it was pre-trial it was not something that occurred at trial The state was relying upon a ruling by the trial court This was immediately before trial Defense counsel asked that the officers be excluded or forbidden to refer to the vest as body armor By not filing a motion prior to trial is there any kind of forfeiture? Had the state disclosed how they were going to prove it was body armor prior to trial? I don't know the answer to that but in any case even if you look at it that way it was still like an oral motion he's asking the court for an order before trial so to have the police officers not refer to it as body armor and the judge said no I'm not going to grant that Based upon the posture of this case which is evidence went in that you claim shouldn't have gone in Jeopardy has not attached and were we to find that your arguments had merit to reverse and remand for further proceedings because the state would be entitled to attempt the second time around since the evidence that it appropriate evidence Your honor I'm not sure I understand your point about why Jeopardy didn't attach Meaning he could be retried and a new trial could result in because the trial judge said you don't need an expert opinion if we come up with a statement and say yes you do then it goes back and the state is given at that juncture the opportunity to present an expert and if they don't then maybe if the trial judge finds the defendant guilty and it comes back up here maybe the law of the case will say no you failed maybe the second time around so maybe either we give you a third chance or we don't give you a third chance but the point is so long as there's a problem with the evidence that's presented there could be evidence that is presented and you claim that there is because an expert could testify as to whether or not this is or isn't Kevlar then the state would be given the opportunity to do that so if in fact you win it goes back for a retrial on whether or not this best is in fact body armor. I refer the court to this Mockaby case that I cited over there which I think is the Illinois case that's most like this where the state's expert testified that the pills they look just like diazepam and the court said that's not enough the state could have tested these things and what did they do? They reversed the conviction they didn't send it back to give the state another chance to test the things Was that based on a pre-trial ruling though? That was something that occurred at trial See the distinction that Justice McLaren and I am making as well the state and the defense have an opportunity to present their arguments prior to trial and the court then says you don't need an expert to prove this element. The state goes forward and tries the case. That's different than a failure of the state during the course of a trial to prove an element beyond a reasonable doubt. Do you understand the distinction? I do your honor but here's the thing. This oral motion that he made was made immediately before trial and then at trial. May I continue? Yes. And then at trial the state attempted to qualify officer Cancino as an expert and the defense objected and said he was never this is the first we're hearing of this he was never disclosed in discovery as an expert and that would have been before the judge ruled that the non-expert could testify that it was body armor so the state thought it was going to present expert testimony in the form of officer Cancino's and I'd have the same argument over here. What officer Cancino said had no foundation so it was not evidence so it's a little different than where the state had time before trial to decide and they made their trial strategy based upon the court's pretrial ruling. The strategy was exactly what they planned to do I don't have any other questions Thank you very much your honor I ask that they be reversed and sent back for sentencing on to class 2 Thank you There's one more case in the call